JOHN SCHOONOVER, Plaintiff-Appellee, v. AMERICAN FAMILY INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—90—0860

Opinion filed May 30, 1991.—Rehearing denied June 28, 1991.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, Duncan B. Cooper, and David A. Perkins, of counsel), for appellant.

R. John Alvarez, of Grosboll, Becker, Tice, Alvarez & Smith, of Petersburg, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On November 16, 1987, plaintiff John Schoonover purchased a homeowner's insurance policy from defendant American Family Insurance Company to insure a house he had purchased in Jacksonville, Illi-

nois. The insured building was destroyed by fire on November 20, 1987. Plaintiff filed a claim for his loss on March 10, 1988, and defendant denied the claim on May 9, 1988.

On April 4, 1989, plaintiff filed a complaint in the circuit court of Morgan County against defendant, seeking to recover $37,000 for the house, which had been insured for $30,000, plus punitive damages, attorney fees, and the cost charged for the demolition of the building. Defendant filed a motion for summary judgment on the basis that the suit was filed beyond the one-year contractual limitations period for filing suit. Defendant alleged in the motion that plaintiff failed to request a copy of the policy and that plaintiff was at all times represented by counsel. Plaintiff contended in response that the defendant should be estopped from raising the policy's contractual limitations provision as a bar to his action, because plaintiff had never received a copy of the insurance policy and that it was irrelevant that he was represented by counsel.

The trial court entered an order on October 5, 1990, denying defendant's motion for summary judgment. The court held:

"Plaintiff's negligence in failing to inquire about policy limitations does not preclude a finding that the Defendant is estopped to assert the limitation defense where its agent [Harry Coop] failed to make reasonable efforts to locate Plaintiff and deliver to him a copy of the policy."

Supreme Court Rule 308(a), at all times pertinent, has stated:

"When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order." 134 Ill. 2d R. 308(a).

Subsequent to the order denying defendant's motion for summary judgment, the circuit court made the findings required by Supreme Court Rule 308(a) and "identif[ied] the question[s] of law involved" (134 Ill. 2d R. 308(a)), in these words:

"(1) Whether there is an implied covenant in a policy of insurance that requires the insurer or its agent to make all rea-

sonable efforts to deliver a copy of the policy of insurance to the insured?

(2) Whether the insurer is estopped from asserting at summary judgment stage the defense of a one year contractual limitation period for filing suit on the policy where the insured did not request or receive a copy of the policy nor inquire about the policy terms with the agent or the insurer, and *there is a question of fact whether the agent acted reasonably* in failing to provide a copy of the policy to the insured where the insured's residence covered by the policy was destroyed by fire within days after its effective date and the agent was aware of insured's place of employment, prior residences, name and address of his mortgagee, and made no attempt to locate the insured."

Upon defendant's petition, we granted leave to appeal from the order denying defendant's motion for summary judgment. We reverse.

We consider first the scope of the review applicable to the order on appeal. The supreme court has never passed upon the question. In *Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 416 N.E.2d 1110, a class action was brought against certain municipalities and cities to recover certain charges which the utilities had collected from their customers for the municipalities pursuant to legislation requiring the utilities to do so. The utilities and cities joined in a motion to dismiss for lack of venue, and the circuit court denied the motion. A Supreme Court Rule 308 appeal was taken, but the question identifying the point of law involved referred only to the proper venue in regard to the municipalities. The First District Appellate Court held that the scope of review was limited by the identifying question, and thus, the question of proper venue as to the utilities was not reached. Concluding that the utilities which could object to the venue had indicated an interest in the appeal only if the utilities were granted leave to appeal, the appellate court dismissed the appeal.

The *Getto* court reasoned that a Rule 308 appeal should be limited by the identifying question, because the rule applies to appeals from interlocutory orders which are not otherwise appealable. Recognizing that any jurisdiction for an appellate court to entertain the appeal arose from Supreme Court Rule 308, the *Getto* court decided that the identifying question limited the jurisdiction. The First District Appellate Court rendered a similar decision in *Potter v. Chicago Heights Motor Freight, Inc.* (1979), 78 Ill. App. 3d 676, 396 N.E.2d 1366.

In *Kondourajian v. Millers National Insurance Co.* (1987), 151 Ill. App. 3d 870, 503 N.E.2d 775, in a suit on an insurance policy, a

Rule 308 appeal was taken by an insurer which had been denied a motion for summary judgment based on a lapse of the limitation period set forth in the policy. The identifying question did not control the propriety of the denial of the summary judgment. The Third District Appellate Court pointed out that the suit on the policy was not timely filed. The appellate court did not dismiss the appeal, as was done in *Getto*; nor did it affirm the order denying summary judgment. Rather, the appellate court vacated the order denying summary judgment and remanded. Judicial efficiency resulted as the circuit court was then in a position to grant the summary judgment to the insurer pursuant to the explanation in the opinion.

The Fifth District Appellate Court was most recently faced with the operation of identifying question aspects of Supreme Court Rule 308 in *Koch v. Spalding* (1988), 174 Ill. App. 3d 692, 529 N.E.2d 19. There a flagman at an auto racing event sued the track operator for injuries resulting from a collision during a race. Negligence was charged. The defendant pleaded a written exculpatory release agreement which the plaintiff had signed just prior to assuming his duties. The circuit court denied a defense motion for summary judgment but subsequently supplemented that order with findings pursuant to Supreme Court Rule 308 and the appellate court granted leave to appeal. A long identifying question submitted by the circuit court concerned whether various circumstances surrounding the hasty execution of the release agreement vitiated it.

The entire *Koch* panel agreed an exculpatory agreement of the nature involved could be entered into validly, and the circumstances of the execution of the agreement involved did not render it invalid. However, the plaintiff also maintained the defendant had given no consideration for the agreement. As that issue was not encompassed in the defining question, a majority of the court held that question could not be considered even though that question was raised by the motion for summary judgment. The cases of *Kondourajian* and *State of Illinois ex rel. Skinner v. Lombard Co.* (1982), 106 Ill. App. 3d 307, 436 N.E.2d 566, were cited for the rule that on a Supreme Court Rule 308 appeal, the appellate court cannot consider matters not set forth by the trial court in the identifying question. Because the identifying question was answered favorably by the court, the majority elected to vacate the order denying the summary judgment and remanded for further proceedings. The further proceedings would, presumably, begin with a further consideration by the circuit court of the question of whether defendant had conclusively shown that adequate consideration was given for the release.

Justice Harrison dissented in *Koch*. (*Koch*, 174 Ill. App. 3d at 699, 529 N.E.2d at 24 (Harrison, P.J., dissenting).) He agreed the exculpatory release agreement was not inconsistent with public policy, nor was it executed under conditions which made it invalid. He also concluded the record conclusively showed that defendant had given consideration for the agreement. Justice Harrison, therefore, reasoned that the appellate court should reverse and remand with directions to enter summary judgment for defendant. He reasoned that the requirement of Supreme Court Rule 308 for an identifying question was not meant to limit the scope of review, but merely to indicate whether the appeal from the interlocutory order involved a sufficiently important question to warrant such unusual review at such an early stage. He noted that the Fifth District Appellate Court had permitted Rule 308 review in *Cooper v. Bi-State Development Agency* (1987), 158 Ill. App. 3d 19, 22, 510 N.E.2d 1288, 1290, when no identifying question had been provided by the circuit court.

Justice Harrison further stated:

"That the trial court's formulation of the relevant legal questions is not controlling becomes evident when one considers that the basic purpose of a Rule 308 appeal is not to review the trial court's reasoning, but to test the propriety of the trial court's decision in granting or refusing the requested interlocutory relief (*cf. Kellerman v. MCI Telecommunications Corp.* (1985), 134 Ill. App. 3d 71, 73-74, 479 N.E.2d 1057, 1059, *aff'd* (1986), 112 Ill. 2d 428, 493 N.E.2d 1045, *cert. denied* (1986), 479 U.S. 949, 93 L. Ed. 2d 384, 107 S. Ct. 434), where immediate resolution of that issue may materially advance the ultimate termination of the litigation. If the trial court's formulation were binding, a situation might result where the trial court's order would have to be reversed on interlocutory appeal simply because its analysis of the case was defective even though the result it reached would ultimately have to be sustained as correct on appeal following entry of final judgment. In such a situation, the interlocutory appeal, rather than speeding resolution of the case, would have operated simply to protract it, and to have protracted it unnecessarily.

The approach adopted by the majority here exemplifies this problem. By focusing on the issues as framed by the circuit court, rather than examining the correctness of the order itself, the majority leaves unresolved the question of the adequacy of the consideration supporting the agreement signed by plaintiff. If, on remand, the circuit court were to find in favor of plaintiff

on this question, then the majority's opinion as to the validity and effect of the agreement would be rendered meaningless. Meaningless opinions scarcely serve to 'materially advance the ultimate termination of the litigation' as required by Rule 308 (107 Ill. 2d R. 308)." *Koch*, 174 Ill. App. 3d at 699, 529 N.E.2d at 24 (Harrison, P.J., dissenting).

The dissent by Justice Harrison further pointed out that Supreme Court Rule 308 is derived from a Federal statute. (28 U.S.C. §1292(b) (1988); see 134 Ill. 2d R. 308, Committee Comments, at 264.) He then noted that Federal courts have not interpreted that legislation as limiting the appeal to the identifying question but, rather, have stated that the reviewing court is able to consider " 'such questions as are basic to and underlie the order supporting the appeal.' (*In re Oil Spill by Amoco Cadiz* (7th Cir. 1981), 659 F.2d 789, 793 n.5; see also *Merican, Inc. v. Caterpillar Tractor Co.* (3d Cir. 1983), 713 F.2d 958, 962 n.7 ('[o]n a §1292(b) appeal we consider all grounds which might require a reversal ***.' " *Koch*, 174 Ill. App. 3d at 699-700, 529 N.E.2d at 24 (Harrison, P.J., dissenting).

We agree with the dissent of Justice Harrison in *Koch*. Supreme Court Rule 308(a) speaks of the appeal being from "the order" which is "an interlocutory order not otherwise appealable" (134 Ill. 2d R. 308(a)). The rule says nothing about limiting the scope of the appeal. Rather, the rule states that the appeal must "*involve*[] a question of law as to which there is a substantial ground for a difference of opinion." (Emphasis added.) (134 Ill. 2d R. 308(a).) When the purpose of a supreme court rule is to have that court answer a question of law certified to it by the United States Supreme Court or the United States Circuit Court of Appeals for the Seventh Circuit, the supreme court has provided that the "certification order shall contain: (1) the questions of law to be *answered*." (Emphasis added.) (134 Ill. 2d R. 20(b).) If the Illinois Supreme Court had intended for Supreme Court Rule 308 to have merely involved the certification of a question to be answered by the appellate court, Supreme Court Rule 308(a) would have spoken of a question being certified for answer rather than permitting an appeal from the order which implies that the propriety of the order appealed is to be determined.

We recognize that appeal from interlocutory orders under Supreme Court Rule 308 is not favored and should be sparingly used. The purpose of requiring an identifying question is to enable the reviewing court to ascertain whether the extraordinary appeal is appropriate. Once appeal is granted, no judicial economy results from limiting consideration to the questions identified when the propriety of the

order on appeal can be determined once and for all by considering all issues properly raised below. We conclude that here, we are to determine whether the circuit court erred in denying defendant's motion for summary judgment.

In reviewing an order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue as to a material fact does still exist. Summary judgment is proper when the matters properly before the court show that if the case were to go to trial, there would be no question for the trier of fact to decide and the movant would be entitled to judgment as a matter of law. *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 718, 506 N.E.2d 1052, 1055; Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.

In support of the motion for summary judgment, defendant presented (1) discovery depositions of plaintiff and of defendant's sales agent, Harry Coop; (2) copies of plaintiff's application for homeowner's insurance and the policy issued; (3) a letter to plaintiff from defendant dated January 26, 1988, advising plaintiff of the policy requirement that he file a "proof of loss" claim within 60 days of the loss and extending this requirement an additional 60 days; (4) plaintiff's sworn statement in proof of loss dated March 10, 1988; (5) defendant's letter of May 9, 1988, denying the claim; and (6) plaintiff's complaint filed April 4, 1989. Plaintiff does not contest the form in which the above matters were presented.

Coop indicated in his deposition that (1) he was an insurance sales agent for defendant; (2) when plaintiff applied for homeowner's insurance, he told Coop he was going to do some remodeling and would be residing in the insured house within 30 days; (3) the current address Coop had for plaintiff was the dwelling which was destroyed by fire; (4) although defendant sent Coop a copy of the policy approximately two weeks after the fire, Coop was unable to mail a copy to plaintiff, because he did not know where plaintiff lived; (5) the application for insurance listed plaintiff's "previous" address in Beardstown; (6) Coop did not know whether defendant had sent a copy of the policy to plaintiff; (7) the original of the policy would have been mailed to Jacksonville Savings and Loan, the holder of the mortgage on the property; and (8) he knew the fire department considered the fire to be "of suspicious origin," but he did not know a claim had been filed.

Plaintiff testified in his deposition that (1) he never received a copy of the insurance policy; (2) the first time he saw a copy of the policy was after the lawsuit was filed in April 1989; (3) Coop did not

tell him after the fire that he could pick the policy up, and plaintiff never asked to see a copy of the policy; (4) he did not know the policy contained a one-year limitation period on suits against defendant; and (5) he has been represented by counsel at all times since approximately March 1988, when he filed his claim.

The application for insurance listed (1) the property destroyed by fire as plaintiff's current address; (2) plaintiff's occupation and the name of his employer; (3) plaintiff's "previous address" in Beardstown; (4) Jacksonville Savings and Loan as mortgagee; and (5) the type of policy as being for a dwelling occupied by the insured.

Defendant argues first that the trial court erred in precluding defendant from asserting the bar of the one-year contractual limitations provision. Defendant notes that only plaintiff knew he had not received a copy of the policy: plaintiff never requested a copy; the sales agent was unable to mail a copy to plaintiff because the fire had destroyed what the agent thought was plaintiff's current address almost immediately after the inception of the policy; the agent did not know whether the company had mailed a copy of the policy to plaintiff; and plaintiff's attorney never requested a copy of the policy before filing the complaint. Defendant further notes it mailed the original of the policy to the mortgagee and a copy to Harry Coop.

Defendant claims that although it is undisputed that plaintiff did not receive a copy of the policy prior to the fire, delivery of the policy was not essential to the completion of the contract, and there is no basis for failing to charge plaintiff with knowledge of the contents of the policy such as to require a timely action disputing the denial of coverage. Defendant maintains it had no duty to "track" plaintiff down after his residence was destroyed.

There have been no cases cited from Illinois or other jurisdictions with the exact factual situation involved here, *i.e.*, where plaintiff allegedly had never received a copy of the policy or any information about the contents and had not requested such information.

■ It is clear that actual or manual delivery of a policy is not essential to the completion of an insurance contract, unless the contract expressly indicates delivery is a requirement as a condition of the consummation of the contract. (1 Couch on Insurance 2d §10.4, at 683 (rev. 1984).) Here, the question is not whether the insurance policy was in effect because it was not delivered or whether the insurance company was bound by the policy. Rather, the question is whether the plaintiff can be bound by the terms of a policy which he claims he has never seen and of which he was never informed.

Defendant does not argue that it would not be bound to defend a timely filed complaint.

■ An insured is charged with notice of the contents of an insurance policy, despite the fact that he had not received the policy, especially if the policy was available and he was not prevented from reading it. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 307, 393 N.E.2d 1223, 1231.) The insured cannot blame the insurance company for his failure to read the policy to discover the requirements for bringing suit. It is not the duty of the insurer to inform the insured of his duties. Further, in *Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 458 N.E.2d 611, the court found that although the insured did not receive a copy of his policy, a transmittal sheet sent by the company indicating the policy was enclosed, when it was not, was sufficient to put the insured on notice that he should have received a copy of the policy.

■ Here, plaintiff received a letter approximately two months after the fire loss, in which defendant specifically referred to sections of the policy and quoted a requirement that proof of loss must be filed within 60 days of the loss. This letter put plaintiff on notice that a policy was issued and that he should have received a copy of the policy.

Other jurisdictions have reached similar results. In *Reliance Insurance Co. v. D'Amico* (Fla. Dist. Ct. App. 1988), 528 So. 2d 533, the court noted that the fact that the insured had never received a copy of an insurance policy because his insurance agent kept it on file was irrelevant to the question of whether the insurance company should have advised him of a certain requirement in the policy. The court noted he had a duty to learn and know the contents of the policy before he signed it. The court said since the insured did not allege he was prevented from reading the policy or induced not to read it, he was bound by its terms. *Reliance*, 528 So. 2d at 535.

Plaintiff argues he cannot be charged with knowledge of the policy provision regarding the time limitation, because he did not have knowledge that the policy actually existed. This contention is contrary to the facts, however. Plaintiff admitted having received a letter from defendant in which defendant extended the 60-day period for filing a claim for loss. In this certified letter dated January 26, 1988, defendant specifically quoted "pages 6 & 7 of the policy under Conditions—Section 1 *** paragraph 3 'What You Must Do In Case of Loss.' " As stated in *Dobosz*, this letter was sufficient to put the plaintiff on notice of the existence of the policy and that he should have received a copy.

■ Compliance with the contractual limitations provision is a condition precedent to recovery under a policy of insurance. (*McMahon v. Millers National Insurance Co.* (1971), 131 Ill. App. 2d 339, 341, 266 N.E.2d 714, 716.) A breach of the one-year limitation provision precludes the insured's recovery under the policy and renders his suit subject to dismissal. Numerous Illinois cases have recognized the validity of a one-year limitation in insurance cases. The Illinois Supreme Court noted there are "strong reasons" to impose such a condition because of the greater difficulty in investigating and preparing a defense for losses following a greater lapse of time. *Peoria Marine & Fire Insurance Co. v. Whitehill* (1861), 25 Ill. 466, 474.

■ The Illinois Department of Insurance requires "uniform insurance contracts, including contractual limitations on the time within which suits may be brought against the insurer by the insured." (Illinois Insurance Department Official Regulations & Credit Bulletins, art. XXIII, Rule 23.01 (National Insurance Law Service, 1983).) The provision in the policy conformed to the standard fire policy language. (*Wabash Power Equipment Co. v. International Insurance Co.* (1989), 184 Ill. App. 3d 838, 540 N.E.2d 960.) It is inconceivable that plaintiff's attorney was unaware of the existence of the policy or unaware that the policy should be consulted when he was contemplating filing suit to enforce its provisions.

Plaintiff next contends defendant is estopped from raising the bar of the one-year limitation period because of defendant's failure to deliver the policy.

The only case cited by plaintiff is *Union Fire Insurance Co. v. Stone* (1930), 41 Ga. 49, 152 S.E. 146. There, a fire insurance policy was delivered by the insured to an agent of the company for the purpose of having attached a "loss payable clause." However, before the policy was returned to the insured, a fire destroyed the insured property. Afterward, the insurer refused the insured's request to redeliver the policy. The court held that the conduct of the insurance company in refusing to return the policy, thereby keeping the insured in ignorance of a provision requiring suit to be brought within one year of the loss, operated to estop the company from relying on that provision.

The plaintiff here argues that although defendant did not refuse to deliver the policy, the failure to deliver was in essence a tacit refusal to deliver. He maintains since he did not have the policy and was not aware of the provision requiring suit against the company be brought within one year of the loss, the company should be estopped from asserting that provision.

■ We disagree. The plaintiff here, unlike in *Stone*, never requested a copy of the policy, and the defendant never refused to give the policy. Defendant's failure to deliver the policy did not amount to a "tacit refusal" to deliver.

Estoppel implies that the insured relied upon some act, conduct, or nonaction of the insurer to his detriment. "[T]o establish an estoppel the insured must show that it was in some manner misled by the acts or statements of the insurer or its agents [citations]; that the insured relied on this conduct or representation ***, and that the insured was prejudiced thereby." *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 304-05, 393 N.E.2d 1223, 1229-30.

In *First Federal Savings & Loan Association v. Nationwide Mutual Fire Insurance Co.* (Del. 1983), 460 A.2d 543, the court discussed the doctrine of estoppel as it applied to actions of an insurer. The court noted that "the [principle] of estoppel prevents the assertion of a contractual condition by a party who, through words or conduct, has fostered the impression that the condition will not be asserted as a legal defense." (*First Federal*, 460 A.2d at 545.) The court further noted that if an insured intends to rely on estoppel to avoid the consequence of failing to comply with a policy's one-year limitation period, he will have to prove the company misled him and that he relied on that misleading conduct to his detriment. *First Federal*, 460 A.2d at 546.

■ ■ Cases in which an insurer's conduct is found to amount to estoppel typically involve a concession of liability by the insurer, advance payments made by the insurer to the plaintiff in contemplation of eventual settlement, and statements by the insurer which encourage the plaintiff to delay filing his action. (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1143, 419 N.E.2d 465, 468.) In *Zieba v. Middlesex Mutual Assurance Co.* (D. Conn. 1982), 549 F. Supp. 1318, the court indicated the estoppel doctrine contains two criteria: (1) one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change his position or do some act to his injury which he would not otherwise have done; and (2) a party relying on estoppel must demonstrate that due diligence was exercised to know the truth, that the truth was not known, and that the party lacked reasonable means to ascertain the truth. *Zieba*, 549 F. Supp. at 1322.

Here, defendant denied coverage of plaintiff's loss in May 1988. Plaintiff took no further action until filing his complaint in April 1989. There is no evidence that defendant communicated with plaintiff dur-

ing that time, entered into settlement negotiations, or refused to supply plaintiff with a copy of the policy. Plaintiff never requested a copy of the policy, nor did his attorney, although plaintiff obviously contemplated filing suit.

Numerous courts have determined that representation by an attorney precludes an insured from alleging that he was misled by the terms of a policy or was ignorant of certain provisions in the policy. In *Advanced Methods, Inc. v. Grain Dealers Mutual Insurance Co.* (7th Cir. 1960), 274 F.2d 634, plaintiff filed suit more than two years following a fire loss. Defendant denied liability, *inter alia*, on the ground that the suit was not filed within the 12-month limitation period for filing suit. Plaintiff alleged defendant was estopped from asserting the limitation period because the written binder was never delivered to plaintiff. The court noted that at no time did Advanced Methods or its attorneys request that defendant furnish a copy of the policy. The court found that where Advanced Methods had retained attorneys who threatened suit, Grain Dealers was not under a duty, upon its own initiative, to forward a copy of the agreed forfeiture conditions. *Advanced Methods*, 274 F.2d at 637.

In *Peters v. St. Paul Fire & Marine Insurance Co.* (S.D. N.Y. 1963), 213 F. Supp. 441, the insured brought an action for the loss of personal property more than one year after the loss occurred. The insured claimed the defendant was estopped from asserting the defense of the one-year limitation period, because she had never received a policy from the company. The court noted that the policy was sent directly to the mortgagee, and plaintiff received only a six-page document entitled "Homeowner's Policy—Memorandum of Insurance." The memorandum did not contain or disclose the existence of a one-year period of limitation. The court found that although the memorandum may have been sufficiently misleading to a layman insured to raise the possibility of estopping the company from asserting the limitation period, since plaintiff had engaged counsel to act on her behalf within four months after the alleged loss, the contractual limitation period was binding on plaintiff.

Taking the evidence shown here most favorably to plaintiff, where plaintiff had the aid of counsel well before the expiration of the time limits of the policy for bringing suit thereon, clearly defendant was neither (1) under a duty to make efforts greater than those made to deliver a copy of the policy to plaintiff, nor (2) estopped to raise the defense of the policy limitations. Plaintiff objects to our consideration of the legal representation which plaintiff had during the times mentioned because the existence of that representation was not in-

cluded in the identifying questions. Because of our determination that the identifying questions do not limit the scope of review, we do not deem lack of inclusion of that factor in those questions is significant.

Here, we have chosen to consider, as a factor supporting defendant's right to a summary judgment, the fact that plaintiff had benefit of counsel during a significant portion of the limitation period provided by the insurance policy. We do not suggest that defendant may not have been entitled to a summary judgment absent that factor. The rights of an unrepresented insured under otherwise similar circumstances need not be decided at this time.

Accordingly, we reverse the decision of the circuit court denying summary judgment and remand the cause to the circuit court of Morgan County with directions to enter summary judgment in bar of action in favor of defendant and against plaintiff.

Reversed and remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.